UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ALBANY INTERNATIONAL
CORPORATION,

        Plaintiff,

   -v-                                        1:13-CV-00257

YAMAUCHI CORPORATION, and
ASTENJOHNSON, INC.,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                               OF COUNSEL:

FROMMER LAWRENCE & HAUG LLP       RICHARD E. PARKE, ESQ.
Attorneys for Plaintiff                      RONALD R. SANTUCCI, ESQ.
745 Fifth Avenue
New York, New York 10151

HESLIN ROTHENBERG FARLEY & MESITI P.C.   DAVID P. MIRANDA, ESQ.
Attorneys for Defendants                    CAROLINE B. AHN, ESQ.
5 Columbia Circle
Albany, NY 12203

HOPENFELD SINGER RICE & SAITO LLP     JAMES E. HOPENFELD, ESQ.
Attorneys for Defendants
2200 Pennsylvania Ave N.W., Fourth Floor
Washington, DC 20037

DAVID N. HURD
United States District Judge

## **MEMORANDUM-DECISION and ORDER**

## I. **INTRODUCTION**

This action arises out of a dispute between Albany International Corporation ("Albany") and Yamauchi Corporation ("Yamauchi") over the validity of four U.S. patents that protect various design aspects of "shoe press belts," which are used to remove excess water during the paper manufacturing process. Albany filed the instant action alleging that Yamauchi and its U.S. sales representative, AstenJohnson, Inc. ("AstenJohnson"), are manufacturing and selling products that infringe two of its patents (the "Albany Patents").[1] It also seeks a declaration that the two patents Yamauchi holds on similar technology are invalid and unenforceable (the "Yamauchi Patents").[2]

Yamauchi and AstenJohnson (collectively "defendants") have filed this joint motion to dismiss or transfer pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3) ("Rule ___"), 28 U.S.C. § 1404(a), and Local Rule 7.1. They argue that there is no personal jurisdiction over either defendant, and that venue is improperly laid against AstenJohnson. Alternatively, defendants seek to transfer this case to the District of South Carolina. Plaintiff opposes, and in the alternative requests leave to conduct jurisdictional discovery. Oral argument was heard on Friday, October 11, 2012 in Utica, New York. Decision was reserved.

---

[1] U.S. Patent Nos. "7,387,711 B2" and "8,080,137 B2."

[2] U.S. Patent Nos. "7,374,641 B2" and "7,501,044."

## II. FACTUAL BACKGROUND

### A. Parties

Albany is a Delaware corporation based in Rochester, New Hampshire. Compl. ¶ 1. It manufactures a number of products, including shoe press belts. Id. ¶ 14. Prior to 2011, Albany's corporate headquarters were located just outside of Albany, New York. Moriarty Decl., ECF No. 19-1, ¶ 6. Although the majority of its operations have been relocated to the United Kingdom, Sweden, and China, Albany still operates two locations in New York that employ approximately 310 people. Id. ¶ 7.

Yamauchi is a Japanese corporation based in Osaka, Japan. Compl. ¶ 2. It manufactures a number of industrial products, including the allegedly infringing Yamabelt Super95 Interrupted Groove shoe press belt ("Yamabelt"). See id. ¶ 5. Although it has a U.S. sales office located in Schaumburg, Illinois, Yamauchi has no offices or facilities in New York and is not authorized to do business in the State. Nakagawa Decl., ECF No. 15-15, ¶ 4. It has never sold a Yamabelt in New York.[3] Id. ¶¶ 8-9; see Compl. ¶ 15. Yamauchi maintains a globally accessible website that provides information about its various products, but a direct purchase cannot be made from the website. Compl. ¶ 16. Rather, sales inquiries in the "Americas" are directed to Luc Foisy, an AstenJohnson employee located at a facility in Kanata, Ontario, Canada. See id. ¶ 17; Pl.'s Mem. Opp'n, ECF No. 19, 5 ("Pl.'s Mem.").

AstenJohnson is a Delaware corporation based in Charleston, South Carolina. Compl. ¶ 3. It manufactures and sells products for the papermaking industry, but does not

---

[3] Defendants admit that Yamauchi provided a price quote for a different shoe belt press design to a single customer in Staten Island, N.Y. in May 2012, but no sale was ever made. Nakagawa Decl. ¶ 9.

make or use shoe press belts.  See id. ¶ 7; Pl.'s Mem. 6.  It is authorized to do business in New York.  Compl. ¶ 7.  However, it does not maintain an office or bank account, own property, or otherwise have a corporate presence in the state, and "substantially less" than one percent of the total sales of its various products take place in the Northern District of New York.  Kemp Decl., ECF No. 15-16, ¶¶ 5-6.  Since May 2009, AstenJohnson has promoted the sale of Yamauchi's shoe press belts on behalf of Yamauchi's U.S. subsidiary.  Compl. ¶ 17.  However, AstenJohnson does not have the authority to make sales—inquiries are referred to Yamauchi's U.S. subsidiary in Illinois.  See id.; Kemp Decl. ¶ 4.  AstenJohnson also has a globally accessible website, but no products are offered for sale, and the website does not mention the Yamabelt or the company's affiliation with Yamauchi.  Id. ¶ 8.

### B. Procedural history

In late December 2012, Albany and Yamauchi, acting through their respective counsel, began a heated exchange of letters over the validity of the U.S. patents that are now the subject of this action.  Parke Decl., ECF No. 19-2, ¶¶ 3-5.  On March 6, 2013, Yamauchi sued Albany in the Central District of California (the "California action"), alleging that Albany was infringing on the Yamauchi Patents and seeking a declaration that the Albany Patents were invalid or unenforceable.  Id. ¶ 6.  The very next day, Albany sued Yamauchi in the Northern District of New York (the "New York action") alleging the inverse.  Id. ¶ 7.

On July 22, 2013, Albany filed a motion before the court in the California action to transfer the case to the Northern District of New York.  Id. ¶ 7.  Due to a "calendaring error," Yamauchi failed to file a brief in opposition and the court presiding over the California action

granted Albany's motion to transfer as unopposed.  Id.; Defs.' Mem. Supp. Mot. Dismiss, ECF No. 15-1, 7 ("Defs.' Mem.").  The next day, Yamauchi filed an emergency motion requesting that the California court vacate its transfer order and consider Albany's transfer motion on the merits.  Parke Decl. ¶ 8.  The California court denied Yamauchi's emergency motion, finding that the Central District of California was an inappropriate venue because there were no witnesses or evidence from either party located there.  Id. ¶ 9.

Immediately after the California action was transferred, Yamauchi filed a Notice of Voluntary Dismissal in that case.  Id. ¶ 12.  The very next day, defendants filed this joint motion to dismiss the New York action.

## III. DISCUSSION

### A. Rule 12(b)(2)—Legal Standard

In opposing a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing a proper basis for personal jurisdiction over the defendant.  Nat'l Elec. Sys., Inc. v. City of Anderson, 601 F. Supp. 2d 495, 497 (N.D.N.Y. 2009) (citing Bank Brussels Lambert v. Fiddler Gonzalez & Rodriquez, 171 F.3d 779, 784 (2d Cir. 1999)).

Absent discovery or an evidentiary hearing, the plaintiff need only "allege facts constituting a prima facie showing of personal jurisdiction."  Id. (citing PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1106 (2d Cir. 1997)).  At this early stage, all pleadings and factual ambiguities are construed in favor of the plaintiff.  Id. (citing Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994)).  With these principles in mind, personal jurisdiction inquiries are "necessarily fact sensitive because each case is dependent upon its own particular circumstances."  PDK Labs, Inc., 103 F.3d at 1108 (quoting Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1991).

### B. AstenJohnson[4]

Defendants argue that there is no basis for the exercise of personal jurisdiction over AstenJohnson because: (1) it does not maintain any corporate presence in New York; and (2) it has never sold or offered for sale any infringing products in New York. Albany alleges that AstenJohnson: (1) is authorized to do business in New York; (2) sells products in New York; and (3) has offered infringing shoe press belts for sale in New York through its website.

A court may exercise personal jurisdiction over a defendant who could be subjected "to the jurisdiction of a court of general jurisdiction in the state where the district court is located." FED. R. CIV. P. 4(K)(1)(A); see also Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 94 (2d Cir. 2000). In determining personal jurisdiction in a patent case, "the district court must apply the law of the state in which it sits and must defer to that state's highest court when interpreting said law." Meteoro Amusement Corp. v. Six Flags, 267 F. Supp. 2d 263, 267 (N.D.N.Y. 2003) (McCurn, S.J.) (citations omitted).

#### 1. General Jurisdiction

A foreign corporation is subject to the general jurisdiction of New York courts if it is "doing business . . . in such a continuous and systematic manner that it is deemed present in the state." Id. (citing Tauza v. Susquehanna Coal Co., 115 N.E. 915, 917 (N.Y. 1917)). This determination is a simple and pragmatic one which varies in its application depending on the particular facts of each case. See Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 565 N.E.2d 488, 490 (N.Y. 1990) (citing Bryant v. Finnish Nat'l Airline, 208 N.E.2d 439, 441

---

[4] Although defendants have also moved to dismiss the complaint as against AstenJohnson on the basis of improper venue, a separate analysis is unnecessary. "Venue in a patent action against a corporate defendant exists wherever there is personal jurisdiction." Trintec Indus., Inc. v. Pedre Promotional Prod., Inc., 395 F.3d 1275, 1280 (Fed. Cir. 2005) (citing VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.3d 1574, 1583 (Fed. Cir. 1990)).

(N.Y. 1965)).  Courts look for "more than mere solicitation," but have found that activities such as "having office space, employees, and completing financial transactions in the forum, in addition to solicitation, will render a corporate defendant amenable to suit in New York." Meteoro Amusement Corp., 267 F. Supp. 2d at 268 (citing Laufer v. Ostrow, 434 N.E.2d 692, 694 (N.Y. 1982)).  In other words, a foreign corporation must do business in New York "not occasionally or casually, but with a fair measure of permanence and continuity."  Wiwa, 226 F.3d at 95 (internal citation and quotation marks omitted).

Here, Albany alleges that AstenJohnson is authorized to do business in New York. Compl. ¶ 7.  A foreign corporation's authorization to do business in New York is strong evidence in favor of exercising general jurisdiction, but is not conclusive on the issue.[5]  See Bellepointe, Inc. v. Kohl's Dep't Stores, Inc., 975 F. Supp. 562, 564 (S.D.N.Y. 1997) (citing Beja v. Jahangiri, 453 F.2d 959, 962 (2d Cir. 1972).  Rather, the exercise of general jurisdiction requires an inquiry into "whether the totality of the circumstances . . . comports with the requirements of federal due process."  Steuben Foods, Inc., 2013 WL 2105894, at *4 (citing Electronics for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1351 (Fed. Cir. 2003), cert. denied, 540 U.S. 1111 (2004)).  Albany does not contest defendants' assertion that AstenJohnson does not maintain an address, telephone number, bank accounts, offices, or other property in New York.  Pl.'s Mem. 15.  Although one AstenJohnson employee

---

[5] Although recent federal cases in this Circuit have expressed disagreement with this proposition, the appropriate analysis in the context of a patent infringement case remains one based on a totality of the defendant's contacts with the forum.  Compare STX Panocean (UK) Co., LTD. v. Glory Wealth Shipping Pte Ltd., 560 F.3d 127, 131 (2d Cir. 2009) (finding a foreign corporation's registration to do business sufficient to confer personal jurisdiction in the context of a maritime attachment action), with Steuben Foods, Inc. v. Oystar Group, No. 10-CV-780S, 2013 WL 2105894, at *4 (W.D.N.Y. May 14, 2013) (stating that registration alone was sufficient to confer general jurisdiction over a foreign corporation, but specifically finding that defendant's "minimal contacts with New York[,] considered in connection with its registration to do business in the state" satisfied due process in the context of a patent infringement action).

maintains a private residence in New York, he commutes to a facility in Vermont. Kemp Decl. ¶ 5.

Albany also alleges that AstenJohnson sells products in New York. See Compl. ¶ 7. Under New York law, a foreign corporation may be subject to general jurisdiction under the "solicitation-plus" doctrine if its sales to New York customers rise to the level of "substantial solicitation." Copterline Oy v. Sikorsky Aircraft Corp., 649 F. Supp. 2d 5, 16 (E.D.N.Y. 2007) (citing Overseas Media, Inc. v. Skvortsov, 407 F. Supp. 2d 563, 569 (S.D.N.Y. 2006). However, a finding that a foreign corporation derives less than five percent of its revenue from New York sales does not rise to the level of "substantial solicitation." See Bodum U.S.A., Inc. v. Hantover, Inc., No. 11-CV-8702, 2012 WL 1309176, at *4 n.53 (S.D.N.Y. Apr. 16, 2012) (collecting cases). AstenJohnson admits that "substantially less" than one percent of its total annual sales occur in the Northern District of New York, but asserts that none of these sales have included any allegedly infringing shoe press belts. See Kemp Decl. ¶ 6. Plaintiff does not contest this assertion or provide any further factual allegations to support a finding that AstenJohnson's sales rise to the level of "substantial solicitation."

The "doing business" standard is necessarily a stringent one, because a finding of general jurisdiction subjects a foreign corporation to suit "on causes of action wholly unrelated to acts done in New York." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 198 (2d Cir. 1990). In light of defendants' uncontested assertion that AstenJohnson has no corporate presence in New York and does not conduct any activities in the state, AstenJohnson's occasional sales and authorization to do business are insufficient to meet this stringent standard. Accordingly, the exercise of general jurisdiction over AstenJohnson is not warranted.

**2. Specific Jurisdiction**

Albany alleges that AstenJohnson's "transaction of business" and "commission of tortious acts" in New York justify the exercise of personal jurisdiction. Compl. ¶ 7.

Where general jurisdiction is unavailable, New York's long-arm statute may provide for the exercise of specific jurisdiction over a foreign corporation. See N.Y. C.P.L.R. § 302. This analysis entails a two-part inquiry: "[f]irst, plaintiff must have shown that the defendant is capable of being served with process under the forum state's laws; second, the exercise of personal jurisdiction over the non-domiciliary defendant must comport with the requirements of due process." Nat'l Elec. Sys., Inc., 601 F. Supp. 2d at 497-98 (citing Metro. Life. Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996)).

Under C.P.L.R. § 302(a)(1), a court may exercise specific jurisdiction over a non-domiciliary if "the non-domiciliary defendant transacts business within New York and the claim against the non-domiciliary defendant arises directly out of his activity." CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986). Section 302(a)(1) "is a single-act statute requiring but one transaction—albeit a purposeful transaction—to confer jurisdiction in New York." Grand River Enters. Six Nations, Ltd. v. Pryor, 425 F.3d 158, 166 (2d Cir. 2005) (quoting Parke-Bernet Galleries, Inc. v. Franklyn, 256 N.E.2d 506, 507 (N.Y. 1970)).

Under C.P.L.R. § 302(a)(2), a court may exercise specific jurisdiction over a non-domiciliary if the defendant commits "a tortious act within the state." Meteoro Amusement Corp., 267 F. Supp. 2d at 276 (citing Bensusan Rest. Corp. v. King, 126 F.3d 25, 28 (2d Cir. 1997)). According to U.S. Patent Law, it is infringement to make, use, offer to sell, or sell any patented invention in the United States without appropriate authority. See 35 U.S.C. § 271(a).

Here, the only "transaction of business" or "tortious act" that Albany identifies is AstenJohnson's "offering for sale infringing shoe press belts." Compl. ¶ 7. In support of this conclusory allegation, Albany alleges that AstenJohnson "markets its products in New York" through its website and that Yamauchi's website "directly references AstenJohnson." Pl.'s Mem. 6. Albany apparently seeks to impute the details of Yamauchi's website and its information about the Yamabelt to AstenJohnson.

A "passive website" that simply makes information available to others in a foreign jurisdiction will not justify the exercise of personal jurisdiction. See Stephan v. Babysport, LLC, 499 F. Supp. 2d 279, 287-88 (citing Best Van Lines v. Walker, 490 F.3d 239, 251-52 (2d Cir. 2007)). Albany does not contest defendants' assertion that AstenJohnson's website only makes information about its products available and does not allege that the website makes any reference to Yamauchi or the Yamabelt. Yamauchi's website, discussed in more detail below, is similarly passive. Pl.'s Mem. 6. Even assuming the details of Yamauchi's website could be imputed to AstenJohnson, the only reference to AstenJohnson on Yamauchi's website is the contact information for Luc Foisy, an AstenJohnson representative located in Kanata, Ontario, Canada, who handles sales inquiries in the "Americas." Id. 5. Plaintiff concedes that AstenJohnson does not make "process belts" and does not allege any other basis through which AstenJohnson offers allegedly infringing shoe press belts for sale in New York outside of the defendants' websites. Accordingly, the exercise of specific jurisdiction over AstenJohnson is not warranted.

**C. Yamauchi**

Defendants argue that Yamauchi is not subject to personal jurisdiction under Rule 4(k)(2)[6] because it had consented to jurisdiction in the California action at the time Albany filed this action, and that subjecting it to personal jurisdiction would offend due process. Albany argues that Yamauchi's mere consent to suit in California does not prevent the application of Rule 4(k)(2).

"Rule 4(k)(2) was adopted to provide a forum for federal claims in situations where a foreign defendant lacks substantial contacts with any single state but has sufficient contacts with the United States as a whole to satisfy due process standards and justify the application of federal law." Merial Ltd. v. Cipla Ltd., 681 F.3d 1283, 1293-94 (Fed. Cir. 2012) (citing Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico, 563 F.3d 1285, 1295-96 (Fed. Cir. 2009)). The proper exercise of Rule 4(k)(2) jurisdiction requires that: "(1) the plaintiff's claim arises under federal law; (2) the defendant is not subject to personal jurisdiction in the courts of any state; and (3) the exercise of jurisdiction otherwise satisfies Due Process." Id. at 1294. Recognizing the "extraordinary challenge in proving a negative many times over," the Federal Circuit has placed the burden of identifying a suitable forum where plaintiff could have brought suit on the defendant. Id. (quoting Touchcom, Inc. v. Bereskin & Parr, 574 F.3d 1403, 1413 (Fed. Cir. 2009)) (internal quotation marks omitted).

Yamauchi has identified the Central District of California as a suitable forum, arguing that it was subject to personal jurisdiction in California because it had filed the California action before Albany filed this action in the Northern District of New York. In its opposition

---

[6] At oral argument, counsel for Albany clarified that its assertion of personal jurisdiction over Yamauchi is based only on Rule 4(k)(2).

papers, Albany relies on Merial to argue that Yamauchi's "self-serving election of the Central District of California should not serve as a bar to asserting personal jurisdiction" under Rule 4(k)(2). Pl.'s Mem. 12.

However, the court in Merial expressly declined to reach the holding urged by Albany.[7] See id. at 1295 ("[W]e need not decide today the general requirements for a defendant to prevent the application of Rule 4(k)(2) by consenting to suit in another jurisdiction. . . ."). Defendants correctly argue that Merial stands only for the proposition that a foreign defendant challenging a default judgment predicated on Rule 4(k)(2) may not defeat jurisdiction merely by naming a state where it "would have agreed" to suit. See id. at 1294-95. Rather, some basis for personal jurisdiction must have existed at the time the challenged suit was filed.

Albany does not contest that Yamauchi filed the California action on March 6, 2013, or that this action was filed on March 7, 2013, one day later. Parke Decl. ¶ 6. Therefore, Yamauchi was indisputably subject to the jurisdiction of the court in the California action at the time plaintiff filed this action. Because jurisdiction is assessed at the time of filing, the second prong of Rule 4(k)(2) has not been met and plaintiff has not made a prima facie showing of personal jurisdiction. See Minn. & St. Louis R.R. Co. v. Peoria & Pekin Union Ry. Co., 270 U.S. 580, 586 (1926) (Jurisdiction depends on "the state of things existing at the time the suit was brought").

---

[7] At least one district court has held that a foreign defendant's prior consent to suit elsewhere defeats the second prong of Rule 4(k)(2). See Spaceco Bus. Solutions, Inc. v. Mass Engineered Design, Inc., No. 12-CV-02029, 2013 WL 1815894, at *8 (D. Colo. Apr. 29, 2013) (finding Rule 4(k)(2) inapplicable where plaintiffs sought to assert claims against foreign defendants that were "closely related" to claims originally brought in the Eastern District of Texas and noting that the foreign defendants had previously consented to suit there).

- 12 -

Even assuming that Yamauchi's prior consent to suit in the California action does not bar the application of Rule 4(k)(2), defendants argue that exercising jurisdiction over Yamauchi would violate federal due process because it lacks sufficient minimum contacts with the United States. Albany alleges that Yamauchi has offered the infringing Yamabelt for sale in New York and claims that this "constitutes both a transaction of substantial business . . . and a voluntary engagement in purposeful commercial activity." Compl. ¶ 5; Pl.'s Mem. 11. In support of this legal conclusion, Albany proffers the existence of Yamauchi's globally accessible website. Compl. ¶ 16.

The due process clause prohibits a court from exercising personal jurisdiction over a defendant absent "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[8] Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). "Traditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of [personal] jurisdiction is proper." Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). But as noted above, the existence of a "passive" website that simply makes information available to others in a foreign jurisdiction will not justify the exercise of jurisdiction. See Stephan, 499 F. Supp. 2d at 287-88.

Albany alleges that Yamauchi's website is "interactive, not passive" because it "has the potential to result in a sale or an offer for sale of a Yamabelt to a New York customer." Pl.'s Mem. 5. However, Albany does not contest that the website does not offer any products

---

[8] Under Rule 4(k)(2), the due process analysis "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." Synthes (U.S.A.), 563 F.3d at 1295.

for sale.  Id.  Rather, it admits that a customer seeking to purchase a product from the website, such as an allegedly infringing Yamabelt, is instructed to contact Luc Foisy, an AstenJohnson representative located in Kanata, Ontario, Canada.  Id.

The mere fact that "initiating a dialogue with Yamauchi" through its website has the "potential to result in an . . . offer for sale" of a Yamabelt to a New York customer is insufficient to support a finding of minimum contacts, especially in light of defendants' uncontested assertion that no Yamabelts have ever been sold in New York.  Pl.'s Mem. 5; Defs.' Mem. 11.  Albany does not allege any other process by which Yamabelts have been "offer[ed] for sale" in New York or the United States.  See Compl. ¶ 6.  Accordingly, the exercise of personal jurisdiction over Yamauchi is not warranted.

### D.  Transfer

As an alternative to dismissal, defendants move to transfer this suit to the District of South Carolina.  Because dismissal is appropriate in this case, it is unnecessary to reach the issue of transfer.  See Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993) (citation omitted) (noting that the decision to dismiss or transfer "lies within the sound discretion of the district court").

### E.  Jurisdictional Discovery

In the alternative, Albany requests limited jurisdictional discovery.  It is within a district court's discretion to determine whether a plaintiff is entitled to conduct jurisdictional discovery and to "devis[e] the procedures [to] ferret out the facts pertinent to jurisdiction."  Daventree Ltd. v. Republic of Azerbaijan, 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004) (citing APWU v. Potter, 343 F.3d 619, 626 (2d Cir. 2003)) (alterations in original).  Other courts in this district have allowed jurisdictional discovery where a plaintiff has made "a sufficient start toward

establishing personal jurisdiction." Hollenbeck v. Comeq, Inc., 2007 WL 2484299, at *2 (N.D.N.Y. Aug. 28, 2007) (citation and internal quotation marks omitted). However, a court is not obligated to permit discovery "where the allegations of jurisdictional facts, construed most favorably in the plaintiff's favor, fail to state a basis for the exercise of jurisdiction or where a plaintiff's proposed discovery, if granted, would not uncover facts sufficient to sustain jurisdiction." Daventree Ltd., 349 F. Supp. 2d at 761 (citing Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185-86 (2d Cir. 1998)). Construing plaintiff's various allegations of jurisdictional facts in the most favorable light, it has failed to allege a prima facie case of personal jurisdiction over either defendant. Accordingly, plaintiff's request is denied.

## IV. CONCLUSION

Albany's conclusory assertions that jurisdiction is proper are insufficient to render defendants amenable to suit in this forum. Neither defendant has a corporate presence in New York, and plaintiff does not allege that any infringing acts have taken place in the state outside of its assertions that both defendants' websites offer infringing products for sale. The passive nature of both websites, lack of any other factual allegations regarding infringement in New York, and both defendants' complete absence of other contacts with the forum merits dismissal for want of personal jurisdiction.

Therefore, it is

ORDERED that

1. Defendants' joint motion to dismiss is DENIED in part and GRANTED in part;

2. Defendants' joint motion to transfer pursuant to 28 U.S.C. § 1404(a) is DENIED;

3. Defendants' joint motion to dismiss pursuant to Rule 12(b)(2) is GRANTED; and

4. Plaintiff's request for leave to conduct jurisdictional discovery is DENIED.

The Clerk of Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated: October 22, 2013
      Utica, New York.